Good morning, Your Honors. May it please the Court, my name is Amalia Will, representing Petitioner John Doe, along with my co-counsel, Zachary Nightingale. I'd like to reserve five minutes for rebuttal. I'd like to start by briefly addressing the mootness issue. Mr. Doe's petition is not moot because this Court can grant him effective relief. It can grant his petition for review on the merits in order that he be returned to the United States. The Supreme Court made clear in N. Ken that when Congress amended the immigration laws in 1996, it decided to allow noncitizens to litigate petitions for review from outside the United States. The government's assertion that Mr. Doe's petition is moot is directly contrary to N. Ken, where the Supreme Court stated that noncitizens who are removed can, quote, pursue their petitions for review, and those who prevail can be afforded effective relief by facilitation of their return, along with restoration of the immigration status they had upon removal. And following N. Ken, this Court held in Del Cid, Marroquin, that one relevant test for whether a petition challenging a cat denial is mooted by removal is whether granting a petition for review can, quote, increase his chances of being allowed to return to the United States. The answer is simple, as the Court can increase the likelihood that Mr. Doe will be returned to the United States in one of two ways. Either it can grant Petitioner Cat in order his return, or the Court can remand to the BIA to redo its Cat decision, which could result in Petitioner being brought back. Because this Court's decision could result in his return, the petition is not moot. So unless the Court has questions at this stage on mootness, I'd like to move to the merits. The Court should find that the IJ and BIA decisions denying Petitioner protection under the Convention Against Torture are not supported by substantial evidence. This is a case where, by reviewing the more than 700 pages of evidence, the Court can reach only one conclusion, that Petitioner met the standard to be granted Cat. The record clearly shows that Petitioner is likely to be tortured in Mexico by members of his own family in the drug cartel, or individuals who would harm him at his family's or the cartel's behest. Petitioner is likely to be targeted because he acted as an informant and abandoned his perceived duty to the cartel. He is additionally and independently at risk because his father also crossed the cartel, and he would be violently punished for his father's actions, as two of his brothers already were. At least 12 members of his family have been murdered or disappeared in Mexico, and all of his remaining immediate family members, including his father and siblings, fled Mexico in 2012 under threat of death. The record contains ample evidence of pervasive corruption in Mexico, including Petitioner's own family connections to corrupt government officials, and establishes that a government official is likely to acquiesce to his torture. What evidence do you have that a public official would acquiesce in the torture of Doe? Sure. So, as to acquiescence, the IJ found, for example, the IJ disregarded the expert evidence on this point, so the IJ found that the expert evidence merely showed that the government was absent in Michoacan, but that's completely contrary to the record. The record contains numerous documented instances in country conditions in the expert report of Mexican government officials directly participating in or setting up or otherwise condoning extrajudicial acts of torture on behalf of the cartel. So, the expert report at AR 486 to 90, 494, 454 all discuss corruption. The expert testimony at AR 312, 319. There are articles from objective and reputable news outlets like the Washington Post, Foreign Affairs, the New York Times that talk, for example, specifically about the overlapping cartels and militias as well as government corruption, specifically in Michoacan, which is really what his claims centered on. Those are all general discussions. I suppose every country has a certain level of corruption. Is there any evidence in the record that any government official is out to get him, Mr. Doe? Sure. So, one example is that Mr. Doe provided testimony, and there's a letter from his brother as well stating that his own uncle, who he fears is in the cartel, but also has connections to corrupt government officials. And the expert testified about why she thinks that's plausible, his connections to the government. But this court precedent under Madrigal doesn't require that he identify the specific individual who's likely to acquiesce to his torture, but he can make the acquiescence finding through country conditions, which he did here. Your client was deported in what, March of 2016? Yes, I think that's right. That's over two and a half years ago. And I gather he's still alive and kicking, right? Yes, he's alive. So, doesn't that have, I mean, his whole theory is, well, I can't relocate in Mexico because I'd likely be tortured, but he's been there over two and a half years and hasn't been tortured. Doesn't that hurt your case? The petitioner is living in hiding in Mexico. He's been moving around. He's terrified to be there. He wants to come back and is eager to come back to the protection of the United  The question for this court is whether the agency erred on the record here. So, you know, what has happened subsequent to the closing of the record isn't before the court. If the government wanted to introduce evidence about that, they'd need to do a motion to reopen to introduce new evidence. And Mr. Joe would submit his own evidence establishing why he was able to avoid torture and why that doesn't mean that he still can't meet his burden under the cap. Let me ask you, is your position that the evidence in the record compels a grant of cap relief? Or is your position that there was error, legal error in the record and it needs to go back to the BIA? Right. Because I understood you to be saying first that the IJ improperly disregarded the testimony of the expert that committed legal error. And if it's legal error there, it would just be, you know, go back and give proper consideration to the experts report. Right. So I don't, what is your, what's the argument? Yes. So our primary argument, Your Honor, is that the court, excuse me, that the agency decision is not supported by substantial evidence and that on this record no reasonable fact finder could find that he doesn't meet the standard for cat. But in the alternative, there are numerous legal errors that the agency made that we think require, any of them would require a remand. So we do think that the evidence is sufficient and that a remand to have the agency redo their cat decision is not necessary, but we do think that's available if the court doesn't agree with a substantial evidence argument. I'd like to focus on three of the most egregious errors that the agency made. The treatment of the expert, the erroneous acquiescence finding, and also ignoring evidence of the family-based claim. And any of those, again, I think requires a remand to the agency. So as to the first error, the IJ failed to provide a reasoned basis for ignoring the expert's conclusion. IJs are free to give diminished weight to evidence, but they must provide a legitimate reason to do so. Here, the IJ disparaged the expert simply because she gave her opinion on factual questions before the court regarding the likelihood that Mr. Doe would be harmed in Mexico. But giving such an opinion is precisely what experts do. The IJ claimed that the expert had provided no verifiable basis for her conclusions, but this is completely belied by the record. In essence, the IJ treated the expert's report as though it were missing the 20 pages between the introduction and the conclusion where she explains in great detail how she formed her opinion. As in this court's decision in Cole, here the IJ's stated rationale for rejecting the expert's opinion is unsupported by the record, and the agency's decision cannot stand. As to acquiescence, I already addressed this a little bit in terms of the evidence in the record of corruption. Largely, the expert's evidence was really dispositive on this, and the IJ essentially completely ignored the expert's evidence, which was very prejudicial to his claim. But I just want to say one thing about the, before you move on completely from the expert's opinions and her evidence or testimony in her report, did the IJ give it no weight or just like minimal weight? So I read the decision as essentially giving no weight. I mean, he certainly acknowledges it and he discusses a couple of parts of her report and testimony in order to say he doesn't find them persuasive. But he really doesn't. So, yeah, when he says he doesn't find it persuasive because she would just say anything that the Respondent or the Petitioner needed to have said, I — it seems as though he essentially disregards it entirely. But even if he were to give diminished — if the Court were to find that he gave, you know, no weight to it, he can't even do that based on the reason he gave, which was essentially a speculative reason that she would have — you know, he doesn't — he thinks she's biased or she would have said anything. And that's just not — you know, in order for him to disregard the evidence or even to give it diminished weight, he needs to provide a legitimate reason that this Court can review. I wanted to briefly touch just on the third issue of the IJ completely ignoring evidence of Petitioner's claim that he faces an independent risk of torture based on his family's past transgressions against the cartel. This failure to consider that claim entirely violates the regulatory command that the agency consider all evidence relevant to the possibility of future torture, as well as this Court's precedent in Quijada Aguilar that CAT claims must be considered in terms of the aggregate risk of torture from all sources. So I'd like to retain — reserve the remainder of my time. The first issue I'd like to address is the issue of jurisdiction in this case. As the government's argued, the Court lacks jurisdiction in this case because Petitioner's CAT deferral claim is moot. First of all, Petitioner never challenged his status as an aggregated felon for two drug-trafficking convictions of methamphetamine and marijuana. And — Right. This is all about relief. The only relief he ever sought is deferral under the CAT, not withholding, not asylum. So we're only dealing with — and that's because he never challenged his status for having committed a particularly serious crime in this case. So this is somebody who wasn't even in normal removal proceedings. He was in streamlined proceedings, which means, you know, he was on — he was going to be removed unless they could defer that removal under the Convention Against Torture. That's the first — that's the first thing I want to emphasize, is the nature of his relief that he was seeking in this case, CAT deferral, is fairly limited. He was inadmissible. He wasn't — he's not somebody who can be — he's not going to be returned back to an LPR status or some sort of status that he would have. He would — he simply is inadmissible. The second issue I would address is this case is a little bit unique, and it's — it's slightly unique from Dale Seed-Merican — Merican, in that it — in this particular case, there was evidence that the Petitioner went to DHS and said, because he was detained — as he was properly detained, awaiting the determination by the Board of Immigration Appeals of whether to — his — to deny his appeal or not. And apparently what he indicated was, I don't want to be detained anymore, I want to be — I want my removal order executed. Or initially, he said, I don't want to pursue the — the case on the bond hearing that was denied. That's correct, Your Honor. After the bond hearing was denied, he said, I don't want to — apparently, from what was provided to the Court in the motion to dismiss from the ERO officer, was that he requested to be essentially released, and he didn't want to pursue the Board determination — the Board decision. And after that occurred, before he could — before whatever was worked out that he would be removed from the United States, it was determined — the Board released their decision, issued their decision in late February. So this situation is a little bit unique in that the Petitioner is, first of all, requests to voluntarily execute his removal order, and is in fact removed prior to the time that his petition for review was filed. And that's — those are the only distinctions. There's nothing — we don't dispute that Dulcet American is good law, and we don't dispute that the petition — that under the ICE return policy, that certainly anybody who — who prevails on their petition for review, when their petition for review was in place when they were removed, that they can seek, if the Court grants that. Let me — let me see if I understand what — so I thought that after the BIA denied his appeal, there had been some communication between counsel and the local officer? That's right? That's correct, Your Honor. And essentially what — And it finally — it reached the point where counsel said, well, there's nothing in place that stops him from being removed. Is that right? After — There was some confusion, I thought. But she was being — but counsel was being honest that a petition for review had not yet been filed. That's correct, Your Honor. And no stay was in place. I mean, she was being honest. That's correct, Your Honor. There is — the only sort of confusion or disconnect between the facts that are in the declaration from the removal officers and Petitioner's counsel is that one issue. DHS was of the opinion, or what they stated in their opinion, that the petition for review of the board's decision. And four days after that, the Petitioner — I believe it was four days — four days after that, the Petitioner was removed to Mexico. And there was no stay filed. But roughly two or three weeks later, the petition for review was filed. I don't know that that really matters, because the only part that really matters for our case is if — first of all, we are arguing that the entire removal of Petitioner started from his request to have his removal order executed. And second — But I gather from that that if she had said, we're filing a petition for review, don't remove him, that I — am I wrong to prefer that he would have been — he would not have been removed? I think that's correct, Your Honor. He would not have been removed. I believe that's correct. Or at least, if he — if they had filed a stay in conjunction with that, I assume he would not be — I don't know that for certain, obviously, but I would assume that that was the process that DHS was going through with consulting with counsel for Petitioner in that process before. I don't think, as happens if somebody is removed when there's a stay filed or there's something like that, those individuals can be brought back and they frequently are. If it's — Even given the situation, isn't there some relief that could be granted to him? I — it's our argument, Your Honor, that he's — this is sort of the same exact situation that was brought up in Del Cid American, which is you have somebody who's basically a drug trafficking ag felon who is only trying to get cat deferral. It's a very similar situation. And the court — that's why the court asked the government, hey, this individual is inadmissible. What, you know, what can we give this person if this person — other than the person can be brought back? That's the only issue in Del Cid American. And the government said in that case, well, under the ICE policy, this individual could be brought back if they are successful on their petition for remission. That's possible here, too, through — That is correct. The only — the only distinction that we make, and I understand it's a very narrow — it's a very narrow distinction, is that he was removed prior to the filing of the petition for review. Why don't you address the merits? Yes, Your Honor. I'll move on to the cat claim. And we argue that the agency — substantial evidence supports the agency's determination that Petitioner did not meet his burden for cat deferral in this case. The first thing I would address is, during the immigration judge's decision, he noted time and time and time again that all of Petitioner's claim is essentially based on speculation of this event happening or this event could happen or this event could happen. The crux of his claim is that he was dealing methamphetamine, he got caught, and in the process of whatever guilty plea was going on, he agreed to assist the San Jose police in their prosecution of other people within his cartel or whatever he was associated with in their prosecutions. So he agreed, and he apparently gave information about a cousin who has an uncle who is apparently involved with a cartel in Mexico. So that's the crux of his entire case is, because I basically was an informant against one of my family members who is a cousin, that my family is going to kill me when I get back to Mexico. Well, his claim isn't unique. I'm sorry, Your Honor. His claim is not unique. We see these cases pretty regularly. Yes, Your Honor. In fact, Del Cid, Maricón is a very similar case, very similar case. And in Del Cid, Maricón, in that case, it was the same issue. There was an expert that testified and said basically there's a 50 percent chance excuse me, over a 50 percent chance that Del Cid, Maricón would be tortured. It's the same situation here, roughly pretty close. So if I could just, I mean, just sort of discussing what sort of speculation we're talking about here, the issue came up during the proceedings that would the petitioner be tortured because when he was arrested, he had roughly $10,000 worth of methamphetamine that was seized by police. So the question is, well, do you now have a debt with the cartel? And what was argued by petitioners, oh, because he has a debt with the cartel, he's going to be tortured. That's the way the cartels work, and that's what the expert testified to. But as the immigration noted, first of all, the petitioner said, counter to what the expert said, the petitioner testified that he didn't really have a debt at this time with the cartel members because they told him, they said, don't worry about it, and they asked why would the cartel tell you not to worry about this $10,000 debt, and he said, well, because I'm family. The petitioner argues, well, you know, over time that may change and they expect him to work for the cartel to work that money off, but that's different than saying he's going to be tortured because he has a $10,000 debt with the cartel. Also, frequently when there was questions coming up was, are you aware of this individual or this family member that you were an informant against the other family member? So he was asked, did Chile ever find out that you informed on him, and he testified before the IJ, no, at this moment, no, he hasn't. That's on AR-180. His cousin, did Tony ever find out that you informed? No, they didn't. Tony doesn't know. That's on Administrative Record pages 181, 183. And also, it also came up in the context of relocation. He was testifying that he couldn't live elsewhere in Mexico and was asked, how do you know that the sequence of events would occur that wouldn't allow you to move elsewhere in Mexico and avoid torture? He was saying that, well, all the police in Mexico are on the same radio frequency and they all communicate with each other, so if I get pulled over, they may find out who I am and communicate that back to the authorities back in my hometown. But when it really came down to it, he didn't really have an explanation for how he would know that. He testified, I don't know that for sure that those sequence of events would occur with regard to relocation. And while I'm on the topic of relocation, Petitioner's expert testified when asked, is there any reason why Petitioner couldn't relocate somewhere in Mexico? And she testified that it was possible, but she had concerns about it and said it would be very difficult. He'd have to cut off ties with his family, obviously, because his family are drug cartel members and possibly would retaliate against him for being an informant against another family member. But she didn't say it was impossible or that this is something that could not occur. The possibility of relocation was properly considered by the agency in determining that Petitioner didn't meet his burden for cat protection. Also, he testified with regard to his uncle, the one that he fears the most. He fears harm with him because he snitched on the uncle's son. That's the cousin that was providing the, or was the one that the Petitioner gave information on. But he testified he admitted it. His uncle doesn't, at that time, he doesn't have any reason to believe that he knew that he had provided information to the San Jose police. And his father's, and also another thing that he says is that his family's in danger from other family members. But he testified that his father has been targeted by the uncle and whatnot. But his father's declaration doesn't say anything about being threatened by the uncle or having death threats or that he's afraid of the uncle. There's nothing to that effect in the father's declaration. That's on AR-228. So, relocation, that's supported by substantial evidence. And also, acquiescence of the government official. There's no evidence, there's no direct evidence at all that the government, in this case, would seek out and torture Petitioner or that they would acquiesce in any drug cartel members seeking out. I gather you use the term government very loosely. Well, when we're talking about whether or not Petitioner, the one issue that's sort of tied in by the Petitioner is that his uncle possibly has ties with the, I believe it was the Marines and the Army in the town that he was from. But I think the immigration judge determined, based on the facts, that that's not really supported by the record. And in making that determination that the government wouldn't acquiesce in this case, also considered country evidence and the experts' testimony as well in finding that Mexico is currently undergoing a war between law enforcement, where there are certainly corrupt law enforcement and there's certainly corrupt government members, but there's also those who fight the cartels. The fact that there's this ongoing battle between it doesn't necessarily mean that the government is winning that war, but that's not the standard. That's not really what we look at. We look at whether or not the government is acquiescing in any possible torture that Petitioner would experience. I'll just close it and say that, as I said earlier, the Court should dismiss the case because it lacks jurisdiction for mootness. And then the alternative, if the Court finds that it does have jurisdiction, should deny the petition for review because Petitioner didn't meet his burden for cat deferral and Petitioner does not point to any record evidence that compels a different conclusion. Briefly on mootness, Your Honor, as to the government's point that... Could you keep your voice up just a little? Yes. As to the government's point that this case is different because he didn't challenge the removal order or removability. So I don't think that's distinct, first of all, because, as the government conceded, that was the situation in Del Cid, Marroquin, right? 8 U.S.C. 1252A4 specifically provides for judicial review of cat claims, but it must be brought via a petition for review of a removal order. So by challenging cat, you are challenging a removal order. As to the point about Petitioner voluntarily requesting removal, the evidence in the record the government submitted that he told his officer that he wanted to be deported before the BIA decision was issued is totally irrelevant to the issues before this Court. The Petitioner did not actually withdraw his BIA appeal. He did not follow through on that. He talked to counsel and decided not to do that. And as to, you know, voluntariness, I know Judge Pais, you already pointed out, what the record shows is, you know, simply that I, on behalf of Petitioner, contacted ICE and said there's no stay in place, and therefore our understanding is that the order can be executed, which is completely consistent with the statute. The statute, as interpreted by the Supreme Court and in Ken, says that individuals can pursue a petition for review from abroad. So it's within his right to file within the 30 days, even if he's outside the United States. The government counsel said that the only distinction between this case and Del Cid Marroquin is that the removal here happened before the petition for review was filed, which is factually accurate, but that just cannot make a difference, because Congress gave 30 days to file a petition for review. And the fact that ICE's return policy apparently makes that distinction doesn't matter, because the, you know, ICE needs to comply with the law, and the contours of their return policy don't make a difference as to mootness before this Court, because the Court can provide a remedy, just as was done in, just as the Court found in Del Cid Marroquin. There they happened to have decided the case on the ICE policy, because both parties conceded that the individual was covered by the ICE return policy. Here, where that's not the case, the Court can simply order a return. On the merits, as the Court pointed out, this claim is not, you know, that unique. This informant-type claim from Mexico has been brought several times. It's the board's has been reversed several times on similar decisions. Madrigal is one in the Ninth Circuit. There are also a series of Seventh Circuit cases, one of a very recent one called Rivas-Penas, that I cited in a 28-J, that rejected the board saying, very similarly to here, that it was speculative, that the petitioner would be harmed based on both a debt and based on his informant work, where the board had said there, well, there's no evidence that anyone has truly found out about this, and Seventh Circuit reversed. As to relocation, I'll just rest on what's in the briefs, but we think the IJ's relocation determination was also not supported by substantial evidence. So thank you, Your Honors. I just finally wanted to note, as the case is under seal, that we would request that any decision on the merits be kept under seal due to his petitioner's concerns about his identity and safety. Thank you. Roberts. Thank you, counsel. We appreciate your arguments and safe travels. And the matter is submitted at this time.
judges: Gilman, Paez, Owens